IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02990-KLM

MEGHAN F. GALLAGHER,

     Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security,

     Defendant.

_____

**ORDER**

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record** [#8],[2] filed February 18, 2015, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*, and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381, *et seq.* On May 18, 2015, Plaintiff filed an Opening Brief [#12] (the "Brief"). Defendant filed a Response [#13] in opposition. Plaintiff did not file a Reply. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is

_____

    [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#18, #19].

    [2] "[#8]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I.  Factual and Procedural Background

Plaintiff alleges that she became disabled at the age of twenty-nine on July 11, 2007, as a result of autism and bipolar disorder.  Tr. 259, 263.[3]  On September 15, 2010, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI.  Tr. 221, 228.  On February 20, 2013, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 13.

The ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2011, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since July 11, 2007, the alleged onset date.  Tr. 25.  The ALJ found that Plaintiff suffers from three severe impairments: (1) seizure disorder; (2) cognitive disorder; and (3) PTSD.  Tr. 15.  However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 15-16.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at "all exertional levels but with the following non-exertional limitations: no work at unprotected heights, dangerous moving machinery, open flames or bodies of water due to a history of seizures."  Tr. 18.  In addition, the ALJ found that the claimant is limited to "simple, repetitive (SVP 1[] or 2) jobs."  Tr. 18.  Based on the RFC and the testimony of an impartial vocational expert

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 8, 8-1, 8-2, 8-3, 8-4, 8-5, 8-6, 8-7, and 8-8 by the sequential transcript numbers instead of the separate docket numbers.

("VE"), the ALJ found that Plaintiff was able to perform past relevant work as a cashier and a folder.  Tr. 25.  He therefore found Plaintiff not disabled at step four of the sequential evaluation.  Tr. 25.  In addition, he further made an alternative step five finding that Plaintiff's RFC did not preclude her from performing other work existing in the national economy.  Tr. 26.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.   42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making

a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step

or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

## B.  Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying her disability insurance benefits and supplemental security income. *Brief* [#12] at 2.  Specifically, Plaintiff argues that: (1) the ALJ's step four and step five findings "are not based in substantial evidence, and do not resolve the conflict between the VE testimony and the *Dictionary of Occupational Titles*"; (2) the ALJ "did not properly evaluate the weight to be given to the medical evidence and opinions in his decision," improperly rejected the opinions of the consultative examiner and treating psychiatrist, and "failed to anchor the decision in substantial evidence, nor any evidence" ; and (3) the ALJ improperly found that Plaintiff's testimony lacked credibility, and erred by giving little weight to the testimony of third party witnesses.  *Id.* at 2-3 (emphasis in original).  The Court addresses these arguments in reverse order, beginning with Plaintiff's third argument.

-6-

A.      **The ALJ's Evaluation of Plaintiff's Credibility and the Third-Party Testimony**

Plaintiff argues that the ALJ erred in finding that her testimony lacked credibility, and erred by finding that the testimony of third party witnesses was "not credible to the extent it was different with [sic] his RFC findings." *Id.* at 28.[4]

An ALJ's credibility findings are entitled to "particular deference." *Wahpekeche v. Colvin*, ___ F. App'x ___, ___, No. 15-6060, 2016 WL 537248, at *1 (10th Cir. Feb. 11, 2016) (citing *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001)). "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Wahpekeche*, 2016 WL 537248, at *1 (quoting *White*, 287 F.3d at 910). However, an ALJ's decision must still "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Wahpekeche*, 2016 WL 537248, at *1 (quoting SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996)).

In addition to the objective medical evidence, the factors which should be considered when assessing a claimant's credibility include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors which precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the individual receives or has received

---

[4] It is unclear whether Plaintiff contends that the ALJ erred as a matter of law in making his findings, or that the ALJ did not base his findings on substantial evidence. *Brief* [#12] at 28-30. Nonetheless, for the purpose of thoroughness, the Court addresses both arguments.

for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 347186, at *3. The ALJ must link these factors to evidence but is *not* required to perform "a formalistic factor-by-factor recitation of the evidence." *Wahpekeche*, 2016 WL 537248, at *2 (citing *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004); quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "In evaluating the ALJ's analysis, we do not require technical perfection, but are guided by common sense." *Wahpekeche*, 2016 WL 537248, at *2 (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).

Here, the ALJ found that inconsistencies in the record undermined Plaintiff's allegations of "extreme difficulty with concentration," "severe reading disability," and inability to "recall information from moment to moment." Tr. 20, 22. Specifically, the ALJ found that Plaintiff's described daily activities were not limited to the extent expected given her complaints of these symptoms, and noted that Plaintiff had no problems with personal care tasks, preparing her own meals, performing household chores, shopping in stores with credit cards, and that she could manage money. Tr. 22. In addition, the ALJ remarked that Plaintiff had been taking her medication, which the record revealed had been effective in controlling her symptoms. Tr. 22. Lastly, the ALJ found that Plaintiff's contention that she had "extreme difficulty with concentration" was undermined by his own observations of Plaintiff during the two administrative hearings, during which he found her to be able "to participate in the hearing closely, fully, and without being distracted" and that she was "able to respond to questions in an appropriate manner and was alert and capable of following

along." Tr. 20, 22.

Plaintiff argues that the ALJ "must explain why the specific evidence relevant to each factor led him to conclude [Plaintiff's] subjective complaints were not credible." *Brief* [#12] at 31. However, this argument has been squarely rejected by the Tenth Circuit in a recent decision, and it is clear that the ALJ need not engage in a "a formalistic factor-by-factor recitation of the evidence." *Wahpekeche*, 2016 WL 537248, at *2. Rather, the ALJ was required to put forth reasoning containing "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Wahpekeche*, 2016 WL 537248, at *1.

Here, the ALJ gave several reasons for his finding of credibility and explained why he found specific evidence in the record undermined Plaintiff's allegations of disability. Tr. 22. Moreover, none of the factors considered by the ALJ were improper subject matter for his consideration. 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ did not commit error in using daily activities and inconsistencies in the record as a basis for questioning Plaintiff's credibility. *See Wilson*, 602 F.3d at 1146 (finding the ALJ reasonably found a claimant's description of her daily activities did not indicate disabling limitations, where, among other things, the claimant could handle finances, garden, visit friends, and go out to eat). The ALJ did not improperly cite to the effectiveness of Plaintiff's treatment. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) (affirming that the claimant's admission that medication relieved some of her pain supported finding that her impairments were not disabling). Lastly, the ALJ did not

err by citing to and considering his own observation of Plaintiff's behavior at the hearings. *Qualls v. Apfel*, 206 F.3d at 1373 ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility").  Accordingly, the Court finds that the ALJ committed no error in his consideration of Plaintiff's credibility.

Much of Plaintiff's argument appears to protest the ALJ's basis for his findings; in other words, that the ALJ did not base his findings on substantial evidence.  For example, Plaintiff contends that the ALJ "summarily rejected" her statements by finding inconsistencies in the record, although Plaintiff does not further elaborate the legal basis for protesting this finding.  *Brief* [#12] at 28.  However, in finding that Plaintiff's statements were inconsistent with the record, the ALJ not only gave specific reasons, but cited to their basis in the record.  Tr. 22.  Specifically, the ALJ referred to a function report prepared by Plaintiff in which she detailed that she goes out frequently, has no trouble shopping or managing money, participates in social activities, goes on walks with a friend from the shelter, has a consistent daily routine, occasionally goes to Bible study classes on Sundays, and follows instructions "very well."  Tr. 269-74.  In this same report, however, Plaintiff also claimed that she does *not* have friends, and that it is "impossible to interact with others."  Tr. 269, 274.  These inconsistencies were properly considered.[5]  In addition, the record also provides a basis for the ALJ's determination that Plaintiff's medication had been effective in treating her condition.  *See, e.g.*, Tr. 381, 383, 387, 393 (containing notes from physicians stating that Plaintiff was "doing well" on her medication).  Finally, to the

---

[5]  The record contains numerous examples of inconsistent claims by Plaintiff.  For example, in another portion of the record, she reported to a psychiatrist that she was essentially unable to read, despite the fact that the record contains numerous examples of her completing forms.  Tr. 368.

extent that Plaintiff argues that the ALJ did not base his assessment that Plaintiff was able to "participate in the hearing closely, fully, and without being distracted" on substantial evidence, even a cursory review of the transcript reveals an ample basis for the ALJ's determination.  *See, e.g.*, Tr. 32-78.

Accordingly, because the record clearly provides a basis for the ALJ's credibility determination, the Court must "decline [Plaintiff's] invitation to reweigh the evidence to substitute [its] judgment for that of the Commissioner" when the ALJ utilized the correct legal standards in making his credibility finding.  *Harper*, 528 Fed. App'x. at 892 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).  "[W]e will not upset an ALJ's credibility determination that is closely and affirmatively linked to substantial evidence . . ."  *Sitsler v. Astrue*, 410 Fed. App'x. 112, 118 (10th Cir. 2011).

Lastly, Plaintiff also contends that the ALJ should have given greater weight to third-party testimony.  *Brief* [#12] at 29.  The ALJ considered testimony from Angela Walsh ("Ms. Walsh") and Bruce Burrows ("Mr. Burrows"), both of whom know Plaintiff personally.[6]  Tr. 25.  The ALJ afforded "some weight" to the testimonies of Ms. Walsh and Mr. Burrows, but found that their "testimonies are without substantial support from the evidence of record."  Tr. 25.  Essentially, Plaintiff disagrees.  She argues that the testimony of Ms. Walsh "corroborates all of[Plaintiff's] allegations of severe mental impairment," and, with respect to Mr. Burrows, states that his testimony "further elaborates [Plaintiff's] significantly impaired mental status[.]" *Brief* [#12] at 29-30.  However, Plaintiff's contention that the ALJ was required to afford more weight to the testimony of these lay witnesses is without legal

---

[6] Ms. Walsh is the director of the soup kitchen where Plaintiff volunteers, and Mr. Burrows runs the assisted living facility where Plaintiff resides.  Tr. 117, 118.

support.  To the contrary, the ALJ was only required to consider this evidence in light of the medical evidence and other evidence of record.  *Barker v. Astrue*, 459 F. App'x 732, 740 (10th Cir. 2012). It is clear that he did so here.  Tr. 25.  Further, because the ALJ based his rejection of the witnesses' testimony on his finding that it was not corroborated by the record, the ALJ's finding was justified by substantial evidence. *See Barker*, 459 F. App'x at 740 (finding that ALJ properly rejected third-party testimony that was unsupported by the medical evidence on record).

Accordingly, the Court finds that the ALJ did not err in his determination of Plaintiff's credibility and his consideration of third-party testimony, and based his findings on substantial evidence of record.

### B.    The ALJ's Evaluation of Medical Opinions

Plaintiff argues that the ALJ did not properly evaluate the weight to be given to the opinions of Dr. Patricia Lapkin, Plaintiff's treating psychiatrist, and Dr. Steven Volman, a consultative psychiatrist.  *Brief* [#12] at 26.  Plaintiff also contends that the ALJ "failed to anchor the decision in any substantial evidence, nor any evidence." *Id.* at 27.

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*  Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.

1989).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c).

Although the six factors listed above are to be considered in weighing medical opinions, the

Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*,

509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).  To the extent Plaintiff argues that

a treating physician's opinion must be given some level of weight, this argument is rejected.

*See, e.g.*, *Payton v. Astrue*, 480 F. App'x 465, 467-70 (10th Cir. 2012) (holding that the ALJ

appropriately gave no weight to the opinion of the claimant's treating physician).

Here, the ALJ afforded little weight to Dr. Lapkin's opinion that Plaintiff "would never

be able to work" for two reasons: first, the ALJ noted that such a determination is not a

medical opinion but, rather, is a legal determination exclusively reserved for the

Commissioner of the Social Security Administration; and second, the ALJ found that "the

conclusions of Dr. Lapkin go far beyond what is established by the totality of the claimant's

clinical evidence." Tr. 22.  The ALJ explained:

> Dr. Lapkin's opinion is rejected because there is persuasive contradictory evidence, specifically the doctor's own treatment records do not contain clinical evidence that would support the doctor's opinion that the claimant 'will never be able to work.'  For example, the mental status examinations administered by Dr. Lapkin revealed the claimant was alert and oriented

times three with a stable mood and full affect.  There was no evidence of suicidal or homicidal thinking.  There was evidence of irritability.  Her sleep was found to be stable.  She was found to be logical and linear.  She did not have pressure to her speech.  There was no evidence of psychosis.  The claimant had no abnormal involuntary movements.  She was found to have good insight and judgment.  Thus, the undersigned finds . . . Dr. Lapkin's opinion regarding the claimant's inability to work inconsistent with the evidence of record . . . and the doctor's opinion is accordingly rendered less persuasive.

Tr. 22-23.  The ALJ also noted that Dr. Lapkin's functional capacity assessment "was predominately a standard check-in-the-box without much explanation in the form of a narrative" and thus afforded this assessment little weight.  Tr. 23.

The ALJ also "did not afford great weight" to the conclusions of Dr. Volman.  Tr. 24.  Dr. Volman concluded that Plaintiff was moderately limited in her ability to understand and carry out simple instructions, and markedly limited in her ability to understand and remember complex instructions.  Tr. 24; Tr. 368.  The ALJ stated that he did not afford great weight to Dr. Volman's conclusions based on conflicting evidence in the record and because the examination was only a "one-time 'snapshot' psychological evaluation."  Tr. 24.

Plaintiff essentially provides no substantive argument for her contention that the ALJ improperly evaluated the opinions of Drs. Lapkin and Volman other than boilerplate recitations of the relevant law.  *Brief* [#12] at 26-28.  Defendant argues that the Court should deem the argument waived, and that, in any case, the ALJ properly evaluated the medical opinions of Drs. Lapkin and Volman.  *Response* [#13] at 15.

Despite the paucity of Plaintiff's argument here, the Court declines to find that Plaintiff has waived her argument.  Further, a review of the ALJ's decision reveals that the ALJ did not err as a matter of law in reaching his determination of what weight was to be

afforded to the opinions, nor did the ALJ fail to base his findings on substantial evidence in the record.  Specifically, in making his determination that the opinion of Dr. Lapkin should be given little weight, the ALJ noted that Dr. Lapkin's own conclusion not only conflicted with the substantial evidence in the record, but conflicted with Dr. Lapkin's own notes regarding her treatment of Plaintiff.  Tr. 22.  The ALJ further considered the length of treatment, frequency of evaluations, and Plaintiff's relationship with Dr. Lapkin, and found that the other evidence on record conflicted with her conclusions, and that Dr. Lapkin's "check-in-the-box" conclusions gave little to no explanation for the basis of her reasoning. Tr. 23.  Thus, the Court finds that the ALJ committed no error with respect to his analysis of Dr. Lapkin's opinion. *See Watkins*, 350 F.3d at 1300.  Further, the ALJ properly rejected the conclusory, non-medical opinions of Dr. Lapkin that Plaintiff was disabled and unable to work.  *See* 20 C.F.R. § 404.1527(d)(1) (opinions that a claimant is disabled or unable to work are issues reserved for the Commissioner and are not medical opinions, even if they come from a treating physician).

Similarly, in finding that Dr. Volman's opinion should be afforded little weight, the ALJ considered many of the factors enumerated in *Drapeau*, such as the nature and length of the treatment relationship, but found that his opinion was inconsistent with the record as a whole.  Tr. 24.  The ALJ was not required to engage in a factor-by-factor analysis. *Oldham*, 509 F.3d at 1258.  Thus, the Court finds that the ALJ did not err in affording little weight to Dr. Volman's opinion.

Finally, a review of the record corroborates the ALJ's determination that there was little support for the conclusions of these medical providers.  *See* Tr. 412-32.  The Court has thoroughly examined the ALJ's opinion in this regard and finds that the ALJ has clearly

based his findings on substantial evidence. *See, e.g., Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).") (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).

Accordingly, the Court declines to reweigh the ALJ's determination that substantial evidence existed to contradict the opinions of Drs. Lapkin and Volman. *Harper*, 528 Fed. App'x at 892.

## C.    The ALJ's Step Four Finding

Plaintiff argues: (1) the ALJ failed to account for clinically significant mental limitations in his RFC determination; (2) the ALJ incorrectly found that the folder job was performed as significant gainful employment ("SGA"); and (3) the ALJ erred in his alternative findings in his step five analysis. *Brief* [#12] at 17-20.

Notably, at step four, when the ALJ considered whether Plaintiff could perform past relevant work, "it is [P]laintiff's burden to show she cannot perform her particular former occupation or her former occupation as generally performed throughout the national economy." *Medina v. Barnhart*, 68 F. App'x 890, 893 (10th Cir. 2003) (table decision) (citing *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)); *cf.* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find you are not disabled."); 20 C.F.R. § 404.1560(b)(2) ("a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the

claimant actually performed it or as generally performed in the national economy.").

First, Plaintiff argues that the ALJ failed to account for Plaintiff's testimony and failed to take into consideration Dr. Lapkin and Dr. Volman's opinions when determining Plaintiff's RFC. *Brief* [#12] at 13. However, this argument is nothing more than a disagreement with the ALJ's credibility determination and assessment of what weight to afford to the opinions of Dr. Lapkin and Dr. Volman. Because the Court has already addressed and rejected this argument, the Court does not revisit it here.

Second, Plaintiff argues that the ALJ erred in finding that the folder job was SGA. *Id.* at 17. In support of her argument, Plaintiff relies on a snippet of the transcript where the ALJ questioned the vocational expert:

> Okay. But let's say, let's hypothetically say that she, she didn't do that folder job long enough for it to be past relevant work, because it's a little bit hard to read her work history, and when you earned all this money. And I think a lot of them were from, you know, Screen Actors Guild, and Century, Twentieth Century Fox, and people like that, so I doubt that you earned that as a folder, you were earning those as a folder. So let's say that it wasn't past relevant work, any other work in the regional or national economy? And just give me light jobs?

Tr. 138-39. Based on this excerpt, Plaintiff argues that "the ALJ acknowledged that the evidence was insufficient to determine the folder job was SGA." *Brief* [#12] at 20. However, as the ALJ makes clear in his question to the vocational expert, he is asking "hypothetically," and thus the Court disagrees with Plaintiff's assertion that the ALJ acknowledged the insufficiency of the evidence.

To the extent that Plaintiff argues that the ALJ did not base his finding that the folder job was SGA on substantial evidence, this error alone would not mandate reversal, as the ALJ found that Plaintiff is capable of performing past relevant work as both a cashier and folder. Tr. 25. Hence, even were the Court to accept Plaintiff's argument that the folder

job was not past relevant work, the ALJ's finding that Plaintiff could perform her past relevant work as a *cashier* would still remain unchallenged.   *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find you are not disabled.").   Plaintiff does not dispute that her work as a cashier constitutes SGA.   *Brief* [#12] at 20.   Rather, the only argument she makes is that the ALJ erred in finding that "[Plaintiff] was not limited [] to at least to [sic] no more than superficial contact with other people . . . which . . . would knock out the cashier job."   *Id.*   Again, this argument simply disagrees with the ALJ's determination of Plaintiff's RFC, which the Court has already addressed.   Thus, any error the ALJ made in finding that the folder job was past relevant work would constitute harmless error, as "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."   *Armijo v. Astrue*, 385 Fed. App'x 789, 792 (10th Cir. 2010) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Accordingly, because the ALJ found that Plaintiff could perform past relevant work as a cashier, the Court finds that any error the ALJ committed in making the determination that the folder job was SGA amounted to harmless error.   *See Allen*, 357 F.3d at 1145.   Thus the Court does not reach Plaintiff's argument that the ALJ failed to adequately conduct his alternate step five analysis.   *See Williams*, 844 F.2d at 750.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear their own costs and attorney's

fees.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

Dated:  March 31, 2016